# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STEPHNEY LEININGER,

     Plaintiff,

     v.

          CASE NO. 2:06-CV-12249
          JUDGE DENISE PAGE HOOD
          MAGISTRATE JUDGE PAUL KOMIVES

RELIASTAR LIFE INSURANCE CO., a
foreign corporation and a wholly owned
subsidiary of Lion Connecticut Holdings, Inc.

     Defendants.

_____/

## **REPORT AND RECOMMENDATION**

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    C.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.   *Preliminary Matters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.   *Sufficiency of Defendant's Declarations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.   *Choice of Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    E.   *Age and Sex Discrimination (Count I of Plaintiff's Complaint)* . . . . . . . . . . . . . . . . . . 11
        1.   *Discrimination Claims Under ELCRA Generally* . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            a.  Sex Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            b.  Age Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    F.   *Contract and Related Equitable Claims (Counts II-V)* . . . . . . . . . . . . . . . . . . . . . . . . . 21
        1.   *Bonuses and Commissions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        2.   *Termination* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        3.   *Severance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
        4.   *Holdback Bonus* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    G.   *Fraud (Count VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    H.   *Accounting and Exemplary Damages (Counts VII-VIII)* . . . . . . . . . . . . . . . . . . . . . . . 33
    I.   *Right to Know Act (Count IX)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    J.   *ERISA Interference (Count X)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    K.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

I.     <u>RECOMMENDATION</u>: The Court should grant defendant's motion for summary judgment.

II.    <u>REPORT</u>:

A.     *Procedural Background*

Plaintiff Stephney Leininger commenced this action in the Wayne County Circuit Court against defendant Reliastar Life Insurance Company, her former employer, on April 16, 2006.[1]  On May 17, 2006, defendant removed the matter to this Court pursuant to 28 U.S.C. §§ 1332, 1441(a)(1), based on the diverse citizenship of the parties.  Subsequent to defendant's removal, plaintiff filed an amended complaint.  Plaintiff's amended complaint asserts ten causes of action arising from defendant's termination of her employment: (1) age and sex discrimination in violation of the Michigan Elliot-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS §§ 37.2101 *et seq.*; (2) breach of contract; (3) unjust enrichment; (4) procuring cause doctrine; (5) promissory estoppel; (6) fraud; (7) accounting; (8) exemplary damages; (9) violation of the Bullard Plawecki Right to Know Act, MICH. COMP. LAWS §§ 435.501 *et seq.*; and (10) interference with ERISA benefits, 29 U.S.C. § 1140.  The matter is currently before the Court on defendant's motion for summary judgment filed on January 3, 2007.  Plaintiff filed a response to the motion on April 17, 2007, and defendant filed a reply on April 30, 2007.  Plaintiff filed a letter of supplemental authority on June 12, 2007, arguing that a recent Michigan Supreme Court decision entitles her to severance benefits.  Defendant filed a response on July 6, 2007.

B.     *Factual Background*

Although the parties dispute a number of factual issues and the legal implications of the facts,

---

[1]Plaintiff's initial complaint included other parties as defendants.  These other parties were parent companies of defendant Reliastar.

the basic facts relating to the parties' relationship is not in dispute.[2] Plaintiff began working in Illinois as a Customer Sales Representative for Northwestern National Life Insurance Company, defendant's predecessor-in-interest, in 1981. *See* Def.'s Br., Ex. A, Dep. Tr. of Pl., at 35-37 [hereinafter "Pl.'s Dep."]. In 1999, plaintiff accepted a position as a commissioned Sales Representative ("SR") with defendant's Employee Benefits Group, and transferred to Michigan. *See id*. at 44. At the time of plaintiff's transfer, defendant's Michigan sales office consisted of, beside plaintiff, District Manager ("DM") Dave Lockhart, to whom plaintiff reported, and SR Bryan Anderson. *See id*. at 51; Pl.'s Br., Ex. A, Aff. of Pl., ¶ 3 [hereinafter "Pl.'s Aff."]. In 2000, defendant was acquired by ING. Prior to the acquisition, Lockhart transferred to California and was replaced as the Michigan DM by Jeff Stuhr. *See* Pl.'s Dep., at 53; Pl,'s Aff., ¶ 3; Def.'s Br., Ex. B, Decl. of ING Employee Benefits Sales Administration Manager Gwen Wood, ¶¶ 3-4.

On January 8, 2001, following ING's acquisition of defendant, Leininger executed ING's Employee Benefits Bonus Agreement for Sales Representatives. *See* Def.'s Br., Ex. C (the Agreement); *see also*, *id*., Exs. D-E (Bonus Schedule and Sales Management Policy for 2005 and 2004, respectively). This agreement governed plaintiff's employment relationship with defendant for the duration of her employment. *See* Pl.'s Dep., at 190-91. Plaintiff's compensation under the Agreement consisted of three components: (1) a base annual salary; (2) a production bonus, or commission, constituting a percentage of net premiums earned and paid, as determined by performance goals and other factors set forth in the Bonus Schedule; and (3) a profit sharing incentive calculated on the basis of a variety of factors. *See* Pl.'s Dep., at 191-94; Def.'s Br., Ex. C, §§ 2.1-4.3.

---

[2]This section discusses the background facts relating to plaintiff's employment with defendant. More specific facts relating to plaintiff's claims, in particular facts relating to other employees, are discussed in the sections which analyze plaintiff's claims.

The Agreement defines the commissions that are due and not due upon termination of employment, *see* Def.'s Br., Ex. C, § 10.2(A), and the Bonus Schedule sets forth defendant's policies with respect to sales representatives who fail to achieve designated goals, *see id.*, Ex. D, at 27.

In November 2002, Stuhr transferred to Boston, and defendant did not fill the Michigan DM position. At that point, plaintiff became the only remaining Employee Benefits representative in Michigan, and began reporting directly to Regional Vice President/General Manager Jack Femrite in Chicago. *See* Pl.'s Dep., at 56-59; Def.'s Br., Ex. B, Wood Decl., ¶ 4. Plaintiff achieved 164.21% of her $914,000 production goal for 2003. *See* Pl.'s Br., Ex. H, ING Detroit Sales & Quota; Def.'s Br., Ex. F, Decl. of ING HR Resolution Consultant Mikki Kremer, ¶ 5. Effective January 1, 2004, plaintiff was promoted from sales representative to Regional Director (RD). The promotion[3] included a $15,000 increase in plaintiff's annual base salary, but also required plaintiff to meet increased production quotas. Plaintiff advised Femrite that she did not want the change in job responsibilities and asked instead for a lateral transfer, but Femrite told plaintiff that no lateral positions were available and that she had no choice but to accept the move to the RD position. *See* Pl.'s Dep., at 61-63, 83-85, 88-89, 92-93, 109. Plaintiff believed that the "promotion" was merely a trap designed to set her up to fail, so that she could be terminated. *See id.* at 85.[4] Plaintiff was given a pro-rated production goal of only $2,076,505 for 2004 (the goal for incumbent RD's was $3,101,900). *See* Def.'s Br., Ex. B, Wood Decl., ¶ 7; Ex. F, Kremer Decl., ¶ 5; Ex. E, at 3.

Although the parties dispute the cause of plaintiff's low performance numbers, there is no

---

[3]The parties dispute whether the move was in fact a "promotion" and whether plaintiff viewed it as such. This semantic dispute does not affect the merits of plaintiff's claims.

[4]Plaintiff avers that Femrite approached her at the company's 2004 Christmas party and told her "to watch her back because the Defendant was trying to get rid of her." Pl.'s Aff., ¶ 5.

dispute that in 2004, plaintiff achieved only $403,916 in sales, or 19.45% of her production goal. *See id.*, Ex. B, Wood Decl., ¶ 8. Femrite resigned effective January 4, 2005, and was replaced as the Regional Vice President by Lockhart, plaintiff's former Michigan DM. *See id.*, Ex. F, Kremer Decl., ¶ 4(C). Some time in the first half of 2005, Lockhart issued plaintiff a formal written notice that she was being placed on "Phase I" probation in accordance with the Bonus Agreement. *See id.*, Ex. G.[5] Although the parties again dispute the cause, there is no dispute that plaintiff's sales production for 2005 was $216,531, or 5.26% of her production goal. *See id.*, Ex. B, Wood Decl., ¶ 9; Ex. F., Kremer Decl., ¶ 5.

On December 30, 2005, defendant, through Lockhart, terminated plaintiff's employment. *See* Pl.'s Dep., at 23-24, 234-35; Def.'s Br., Ex. F, Kremer Decl., ¶ 3. Plaintiff claims that she asked Lockhart for a transfer, and that a position in Cleveland was available, but her request was denied. *See* Pl.'s Dep., at 108, 110-11. Based on its interpretation of the Agreement, defendant has not paid commissions or bonuses to plaintiff based on 2005 sales, for which premiums were not paid until after her employment was terminated. Plaintiff alleges that she sold $1,768,115 in premiums which did not become due until January 2006. Plaintiff further alleges that she is covered by defendant's severance policy. Finally, plaintiff alleges that she was 2 years, 3 months from fully vesting to her pension, and that as a result of her termination she lost $525,747 in future monthly pension payments.

C.   *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[5]The original memorandum is dated April 18, 2005. *See* Def.'s Br., Ex. G. Plaintiff disputes having received this memorandum; however, there is no dispute that she received it by, at the latest, May 31, 2005. *See id.*; Pl.'s Dep., at 293-95.

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be

granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party."  *Sutherland*, 344 F.3d at 613.

D.  *Preliminary Matters*

    1.    *Sufficiency of Defendant's Declarations*

Plaintiff raises a preliminary matter regarding the sufficiency of defendant's evidence. Specifically plaintiff contends that the declarations of Gwen Wood, Mikki Kremer, Sande Sheppard, and David Lockhart are not notarized, nor do they state that they are made under penalty of perjury as required by 28 U.S.C. § 1746.  *See* Def.'s Br., Exs. B, F, I & N.  Thus, plaintiff argues, the declarations should be stricken and should not be considered by the Court.  However, defendant has since filed amended declarations for each of these individuals which contain the language required by § 1746.  *See* Def.'s Reply Br., Exs. O-R.  Defendant's submission of these corrected declarations moots plaintiff's request that they be stricken, and the declarations may be considered because plaintiff had notice of their contents.  *See Story v. Sunshine Foliage World, Inc.*, 120 F. Supp. 2d 1027, 1031-32 (M.D. Fla. 2000); *United States v. Gritz Bros. Partnership*, 155 F.R.D. 639, 644 (E.D. Wis. 1994).  Accordingly, the Court should consider the declarations in resolving defendant's motion for summary judgment.[6]

---

    [6]The amended declarations are identical to the original declarations but for the addition of the language required by § 1746 in the final paragraph of each declaration.  For ease of reference, I cite throughout this Report to the declarations by the exhibit designation as originally filed.

2.    *Choice of Law*

As another preliminary matter, the Court must decide what law governs plaintiff's state law claims. Both parties proceed on the assumption that Michigan law applies. This assumption is generally correct, with one caveat.

In resolving the parties' state law claims, the Court must apply the substantive law of the state. 28 U.S.C. § 1652 ("The laws of the several states . . . shall be regarded as rules of decisions in civil actions in the courts of the United States, in cases where they apply."); *see also, Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In determining the appropriate source of law, the Court applies the choice of law rules of Michigan, the state in which this Court sits. *See Klaxon v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts."); *International Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996) ("A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state."); *Security Ins. Co. v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1005 (6th Cir. 1995) (same).

Under Michigan choice of law rules, a court "will apply Michigan law unless a 'rational reason' to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, we undertake a two-step analysis. First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286, 562 N.W.2d 466, 471 (1997). No state has an interest with respect to plaintiff's tort (including discrimination) claims; the effects of defendant's actions were felt by plaintiff solely in Michigan and affect Michigan public

8

policy.  Thus, plaintiff's tort and discrimination claims are governed by Michigan law.  *See Foster v. Federal Express Corp.*, No. 04-10325-BC, 2005 WL 3369484, at *3 (E.D. Mich. Dec. 12, 2005) (Lawson, J.).

Plaintiff's contract and quasi-contract claims would likewise be governed by Michigan law. The parties entered into a contract in Michigan for work to be performed in Michigan, and no other state has an interest in having its law applied to the contract at issue.  Thus, under Michigan choice of law rules, Michigan law governs this action.  *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 188(3); *Kipin Indus., Inc. v. Van Deilen Int'l, Inc.*, 182 F.3d 490, 493 (6th Cir. 1999) (noting that Michigan choice of law rules follow §§ 187 and 188 of the *Restatement*).  The parties assume that this general rule controls.  However, in so doing the parties fail to take account of the contractual choice-of-law provision in the Agreement, which provides that "[t]his Agreement will be governed by the laws of the State of Minnesota."  Def.'s Br., Ex. C, § 11.7.  In *Chrysler Corp. v. Skyline Indus. Servs.*, 448 Mich. 113, 528 N.W.2d 698 (1995), the Michigan Supreme Court explicitly adopted the approach of the *Restatement (Second) of Conflicts of Laws*.  The *Restatement* approach notes that the "[p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract."  RESTATMENT (SECOND) OF CONFLICTS OF LAWS § 187 cmt. e (Supp. 1988) [hereinafter "RESTATEMENT"].  Thus, as a general matter, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied[.]" *Id.* § 187(1); *see Chrysler Corp.*, 448 Mich. at 125, 528 N.W.2d at 703.

Thus, with respect to the contract and quasi-contract claims, the Court is faced with a seemingly valid contractual choice-of-law provision which neither party mentions, and with parties who assume that Michigan law applies.  Ordinarily, questions of law are determined by the Court, and

parties may not stipulate to the law.  Choice of law issues, however, do not involve a court's subject matter jurisdiction, and may be stipulated to by parties as a matter of contract.  For these reasons, there is substantial authority for the proposition that parties may stipulate during litigation the source of law governing their dispute.  *See Cates v. Morgan Portable Bldg. Corp.*, 780 F.2d 683, 687 (7th Cir. 1985); *Doe v. Nevada Crossing, Inc.*, 920 F. Supp. 164, 167 (D. Utah 1996); *Van Deurzen v. Yamaha Motor Corp. USA*, 688 N.W.2d 777, 781-82 (Wis. Ct. App. 2004).[7]  By arguing solely in terms of Michigan law and failing to invoke the contractual choice of law provision, the parties have implicitly stipulated that Michigan law is controlling.  *See In re Apex Automotive Warehouse, L.P.*, No. 96 B 04594, 1999 WL 132849, at *3 (Bankr. N.D. Ill. Mar. 9, 1999); *cf. Columbia v. Prudential Ins. Co.*, No. 96-1521, 1997 WL 345728, at *2 (6th Cir. June 20, 1997) (party waived right to challenge applicability of Michigan law, notwithstanding contractual choice-of-law provision selecting New York law, where party argued merits in district court under Michigan law and failed to raise the contractual choice-of-law provision).  *See generally*, *Cates*, 780 F.2d at 687 ("[T]he parties to a lawsuit can, within broad limits, stipulate to the law governing their dispute; and an implied stipulation is good enough.").  Stated another way, "[w]here neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law."  *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995); *see also*, *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003);

---

[7]A number of cases also note that the parties stipulated to the governing law and assume that the stipulation is controlling, without discussing the matter in detail.  *See, e.g.*, *National Union Fire Ins. Co. v. Emhart Corp.*, 11 F.3d 1524, 1528-29 (10th Cir. 1993); *Wagenheim v. Natural Science Indus., Ltd.*, No. 1:04CV0239, 2006 WL 2794790, at *3 (N.D. Ohio Sept. 27, 2006); *Ethicon, Inc. v. Aetna Cas. & Surety Co.*, 805 F. Supp. 203, 204 n.1 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1532 (2d Cir. 1993); *Mariculture Prods. Ltd. v. Those Certain Underwriters at Lloyd's of London Individually Subscribing to Certificate No. 1395/91*, 854 A.2d 1100, 1103 n.2 (Conn. Ct. App. 2004)

*Carbonic Prods. Co. v. Welding & Cutting Supply Co.*, No. 86-1730, 1987 WL 38061, at *1 (6th Cir.

July 17, 1987) (per curiam); *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4

(S.D. Ohio 2001).

Accordingly, the Court should conclude that the parties have stipulated to the applicability of

Michigan law, and therefore should apply Michigan law to plaintiff's contract and quasi-contract

claims.

E.      *Age and Sex Discrimination (Count I of Plaintiff's Complaint)*

Plaintiff first brings claims for age and sex discrimination under Michigan's Elliot-Larsen

Civil Rights Act (ELCRA).[8]  The Court should grant defendant's motion for summary judgment with

respect to these claims.

1.      *Discrimination Claims Under ELCRA Generally*

Section 202 of the ELCRA provides, in relevant part, that "[a]n employer shall not . . . [f]ail

or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to

employment, compensation, or a term, condition, or privilege of employment, because of religion,

race, color, national origin, age, sex, height, weight, or marital status."  MICH. COMP. LAWS §

37.2202(1)(a).  Section 801 of the Act provides for a civil damages remedy for persons aggrieved by

a violation of the Act.  *See* MICH. COMP. LAWS § 37.2801(1).

A plaintiff bringing a disparate treatment discrimination claim under the ELCRA may prove

her case either through direct or circumstantial evidence of discrimination.  "In cases involving direct

evidence of discrimination, a plaintiff may prove unlawful discrimination in the same manner as a

---

[8]Some cases use the term "gender discrimination" as opposed to "sex discrimination."  The
ELCRA, however, uses the term "sex discrimination," *see* MICH. COMP. LAWS § 37.2202(1)(a),
and that term is more accurate as a linguistic matter.  *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S.
127, 157 n.1 (1994) (Scalia, J., dissenting).

plaintiff would prove any other civil case." *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 469

Mich. 124, 132, 666 N.W.2d 186, 192 (2003). If, as is usually the case, a plaintiff has no direct

evidence of discrimination, she must prove her case through circumstantial evidence. "In cases

involving indirect or circumstantial evidence, a plaintiff must proceed by using the burden shifting

approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Sniecinski*, 469

Mich. at 133-34, 666 N.W.2d at 193. As explained by the Michigan Supreme Court:

> This approach allows a plaintiff to present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful discrimination. To establish a rebuttable prima facie case of discrimination, a plaintiff must present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) her failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination. Once a plaintiff has presented a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If a defendant produces such evidence, the presumption is rebutted, and the burden shifts back to the plaintiff to show that the defendant's reasons were not the true reasons, but a mere pretext for discrimination.

*Id*. at 134, 666 N.W.2d at 193 (internal citations, quotation, and footnote omitted).[9]

Regardless of whether discrimination is shown by direct or circumstantial evidence, the

plaintiff must show a causal link between the discriminatory animus and the adverse employment

action. *See id*. at 134-35, 666 N.W.2d at 193. Further, notwithstanding the burden-shifting

framework described above, "'[t]he ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Hazle v. Ford*

*Motor Co.*, 464 Mich. 456, 464 n.8, 628 N.W.2d 515, 522 n.8 (2001) (quoting *Texas Dep't of*

*Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Because ELCRA is similar to analogous

---

[9]Although original adopted for claims of race discrimination under the ELCRA, this framework applies equally to claims of age and sex discrimination. *See Hazle v. Ford Motor Co.*, 464 Mich. 456, 462-63, 628 N.W.2d 515, 521 (2001).

federal anti-discrimination laws such as Title VII and the Age Discrimination in Employment Act, federal cases applying those laws are persuasive in applying ELCRA, *see Radtke v. Everett*, 442 Mich. 368, 381-82, 501 N.W.2d 155, 162 (1993); *Pena v. Ingham County Road Comm'n*, 255 Mich. App. 299, 311 n.3, 660 N.W.2d 351, 359 n.3 (2003), although they are not binding, *see Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422, 697 N.W.2d 851, 859 (2005); *Pena*, 255 Mich. App. at 311 n.3, 660 N.W.2d at 359 n.3.

2.    *Analysis*

Here, plaintiff does not present direct evidence of sex or age discrimination, and thus must prove her claims through circumstantial evidence.  There is no question that plaintiff satisfies the first and second elements of her *prima facie* case.  At the time she was terminated, she was a 52-year-old female, placing her in a protected class with respect to both the age and sex discrimination claims, and there is no doubt that termination constitutes an adverse employment action.  Thus, the validity of plaintiff's claims turns on the third and fourth elements–namely, whether she was qualified for her position and whether the circumstances regarding her firing give rise to an inference of discrimination.

At the outset, I note that the third and fourth elements of plaintiff's *prima facie* case merge in this case.  To be considered qualified for the position, "plaintiff must show that she was performing at a level which met defendant's legitimate expectations."  *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999); *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 699, 568 N.W.2d 64, 69 (1997).  There is no question that plaintiff failed to come close to meeting her sales quotas for 2004 and 2005, and thus that she was failing to meet defendant's expectations concerning her performance.  However, plaintiff essentially argues that those expectations were not legitimate ones because she was set up to fail and treated differently than male employees, factors which go to the inference of discrimination element of her *prima facie* case.  Thus,

13

the third and fourth elements merge into one question.

*a. Sex Discrimination*

In her deposition testimony and interrogatory answers, plaintiff identified three circumstances which give rise to an inference of discrimination. First, she argues that she was given only a 20% production credit on "paid-up certificates" for purposes of calculating her annual profit sharing incentive, while male sales representatives received 100% credit, *see* Pl.'s Dep., at 26; Def.'s Br., Ex. H, Interrogatory Answer 3(1). Second, she claims that she, along with other female sales representatives, were "set up to fail" by being promoted to RD with higher production quotas, while similar male representatives were not terminated or were allowed to transfer, *see* Pl.'s Dep., at 94-98, 102-08, 113-14, 118-22, 263-64; Def.'s Br., Ex. H, Interrogatory Answers 2, 3(3), and 3(4). Third, she claims that she and other female representatives frequently had trouble getting the Underwriting Department to support or approve participation rates and price quote variations that the female representatives attempted to offer potential customers. *See* Pl.'s Dep., at 122-23, 136-50. To support her claim, plaintiff contrasts the treatment given to male employees Lockhart, Anderson, Stuhr, Kenney Bennett, Justin Hansen, David Braxton, Greg Retzlaff, and Chris Beck (who replaced her as RD), with the treatment given to herself and female employees Lisa Spredemann, Colleen McDaniel-Blaize, and Grace Tallarico. Plaintiff also contends that Lockhart provided support to male employees who were placed on Phase I probation, but did not provide similar support to her.

Defendant's change in policy to provide for only a 20% production credit on paid-up certificates does not provide any evidence of discrimination. It is true that prior sales reps and regional directors had received a 100% production credit, and that in plaintiff's case her predecessors were males. However, defendant has presented evidence that this policy change was made based upon an assessment that it was more accurate as a fiscal matter to amortize this credit over five-years, and that the policy

14

change was applied across the board and equally affected male and female sales representatives. *See* Def.'s Br., Ex. B, Wood Decl., ¶ 12 and Tab 1. Plaintiff has presented no evidence to rebut the fact that this change was a company-wide policy change which equally impacted male and female employees, and thus the policy change provides no evidence of discrimination. *See Nichols v. Billiington*, 402 F. Supp. 2d 48, 67 (D.D.C. 2005); *Keelan v. Majesco Software, Inc.*, No. 3:02-CV-1670L, 2004 WL 370225, at *6 (N.D. Tex. Feb. 26, 2004); *Nichols v. Comcast Cablevision of Md.*, 84 F. Supp. 2d 642, 653 n.15 (D. Md.), *aff'd*, 217 F.3d 840 (4th Cir. 2000).[10]

Likewise, plaintiff's alleged problems with the Underwriting Department do not provide evidence of discrimination. As plaintiff noted in her deposition, he frustrations with the Underwriting Department were primarily directed at Vice President Sande Sheppard and Lead Underwriter Lori Jungbauer–both females. She also conceded that she had no evidence that her problems with the Department were gender-based, other than gossip and speculation. Finally, plaintiff admitted that many male representatives also complained about problems with the Underwriting Department. *See* Pl.'s Dep., at 138, 147-51, 154-55, 167-68, 171-74. In light of plaintiff's own testimony, her subjective belief–based on rumors and speculation–that Underwriting was discriminating against her on the basis of her gender is insufficient to establish a genuine issue of material fact on that issue. *See Hein v. All American Plywood Co, Inc.*, 232 F.3d 482, 488 (6th Cir. 2000); *Comiskey v. Automotive Industry Action Group*, 40 F. Supp. 2d 877, 894-95 (E.D. Mich. 1999) (Rosen, J.).

Thus, plaintiff's *prima facie* case succeeds or fails on her assertion that other similarly situated

---

[10]Further, even if the change in policy were sufficient to satisfy plaintiff's *prima facie* case, Wood's declaration provides evidence of a legitimate, nondiscriminatory reason for the change in policy, and plaintiff has presented no evidence to show that defendant's business reason for this change was mere pretext for unlawful discrimination. *See Dozier v. Potter*, No. CCB-06-2273, 2007 WL 2332320, at *9 (D. Md. July 20, 2007); *Schultes v. Naylor*, 195 Mich. App. 640, 646, 491 N.W.2d 240, 243 (1992).

male employees were treated better than she was treated. In order to show that she was similarly situated to any male employee, plaintiff must show that "'all of the relevant aspects' of her employment situation were 'nearly identical' to those of" the supposedly similarly situated employee. *See Town*, 455 Mich. at 700, 568 N.W.2d at 70 (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)); *see also*, *Smith v. Goodwill Indus. of W. Mich., Inc.*, 243 Mich. App. 438, 449, 622 N.W.2d 337, 343 (2000). In other words, plaintiff must show that the male employees with whom she seeks to compare herself "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Loper v. Computer Network Tech. Corp.*, 128 F. Supp. 2d 1061, 1067 (E.D. Mich. 2001) (Feikens, J.).

Under this standard, plaintiff has failed to offer any evidence that she was treated differently than similarly situated male employees. Anderson was not similarly situated to plaintiff. He resigned shortly after ING's acquisition of defendant, and thus was never subject to the ING Bonus Agreement which governed plaintiff's performance. *See* Def.'s Br., Ex. B, Wood Decl., ¶ 2. Lockhart, a management level employee, was likewise not similarly situated to plaintiff because his position is explicitly exempted from the performance improvement and probation provisions of the Bonus Agreement. *See* Def.'s Br., Ex. D, at 27. There is no evidence that Stuhr was similarly situated to plaintiff. Although Stuhr was allowed to transfer, unlike plaintiff, defendants have presented evidence that Stuhr had never had two consecutive years of production below 50% of quota, qualifying him for probation. *See* Def.'s Br., Ex. B, Wood Decl., ¶¶ 4, 6. Plaintiff argues that Stuhr would have had two consecutive years of below 50% performance if he were given only 20% credit on paid-up certificates for the years 2001 and 2002, rather than 100%, but at that time the company police was to give 100% credit. And, as discussed above, there is no evidence that the change in policy was applied in a

discriminatory fashion, or that defendant's change in policy was anything other than a legitimate, non-discriminatory change in business practice.

Likewise, defendant's evidence establishes that Retzlaff was on a performance improvement plan for having failed to meet his 2004 goal, and that he qualified for Phase I probation at the end of 2005, but that his performance was not so low as to qualify him for termination. *See* Def.'s Br., Ex. F, Kremer Decl., Tab 1. Bennett, like plaintiff, was placed on probation and was facing termination at the end of 2005 but, unlike plaintiff, he qualified for the Bonus Agreement's express exception to termination by booking sales for 2006 that exceeded 50% of his goal for that year prior to the end of 2005. *See* Def.'s Br., Ex. B, Wood Decl., ¶ 11; Ex. F, Kremer Decl., ¶ 5. Further, defendant has presented evidence that other employees–Assistant Regional Manager Andrew Gambardella, Senior SR A.J. Huessein–were terminated for poor performance under the Bonus Agreement, and two other employees resigned while on probation and facing year-end termination. *See id.*, Ex. F, ¶ 5 and Tab 1. Chris Beck, plaintiff's replacement, did receive an annual allowance when he was hired, but so did plaintiff. *See* Pl.'s Dep., at 195-97; Def.'s Br., Ex. T. Although Beck's allowance was higher than plaintiff's he was hired seven years later and, unlike plaintiff, he had a business degree and prior insurance sales experience at the time of his hiring. *See* Def.'s Reply Br., Ex. V, Beck Dep., at 14-15, 27-28. Further, female sales representatives hired since plaintiff's termination have received annual allowances comparable to the allowance given to Beck. *See id.*, Ex. U, Supp. Decl. of Gwen Wood, ¶ 3. Nor does defendant's treatment of the female employees identified by plaintiff support an inference that defendant discriminated against her on the basis of her gender. Grace Tellarico, an Assistant Regional Manager, was terminated for poor performance, but so was male ARM Andrew Gambardella, as noted above. Lisa Spredemann and Maria Flynn both voluntarily resigned their positions, and neither was on probation or facing year-end termination at the time of her resignation.

*See* Pl.'s Dep., at 95, 96; Def.'s Br., Ex. F, Kremer Decl., at Tab 1.

In short, defendant's evidence establishes that it applied its objectively measured performance requirements to male and female sales representatives alike. Plaintiff has presented no evidence that she was treated differently from any other sales representative because of her sex or that she was set up to fail because of her sex apart from her own subjective belief that this is what happened. Defendant has presented evidence that the employees identified by plaintiff were either not similarly situated to her or were not subject to different treatment, and plaintiff has presented no objective evidence to rebut the defendant's evidence. She thus has failed to raise a genuine issue of material fact with respect to the third and fourth elements of her *prima facie* case. *See Terwilliger v. GMRI, Inc.*, 952 F. Supp. 1224, 1230 (E.D. Mich. 1997) (Gadola, J.).

It may be that, in plaintiff's view, defendant treated her poorly or set unrealistic sales goals for her position. But plaintiff has presented no evidence that defendant did so because of her sex. The employment discrimination laws prohibit discrimination on the basis of race, sex, and the like; they do not establish general civility codes nor require that employers make competent business decisions. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (internal quotation omitted) (Title VII is "neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace."); *May berry v. Endocrinology-Diabetes Ass'n*, 926 F. Supp. 1315, 1323-24 (M.D. Tenn. 1996) ("Discrimination statutes . . . do not require that employers make fair or accurate assessments of employees abilities or that they assign employees to appropriate positions, absent discriminatory intent or impact."); *Town*, 455 Mich. at 704, 568 N.W.2d at 72 (internal quotation omitted) (question under ELCRA "is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). "Unfairness will not afford a plaintiff a remedy unless the unfair treatment was because of . . . discrimination." *Meagher*

*v. Wayne State Univ.*, 222 Mich. App. 700, 712, 565 N.W.2d 401, 411 (1997). Accordingly, the Court should grant defendant's motion for summary judgment on this claim.

### b. Age Discrimination

Plaintiff also asserts a claim of age discrimination. Plaintiff's brief focuses on her sex discrimination claim, and does not explicitly address her age discrimination claim apart from her ERISA interference claim. In her interrogatory answers and deposition, plaintiff identified two bases for her age discrimination claim: (1) Allison Shors, a younger employee, was not give the increased quota and responsibility as an RD that she, McDaniel-Blaize, and Spredemann were, *see* Def.'s Br., Ex. H, Interrogatory No. 3(2); and (2) she was terminated instead of being given a transfer because she was close to attaining the age of 55, which would have required defendant to pay greater pension benefits, *see* Pl.'s Dep., at 176-78.

As to Shors, defendant's unrebutted evidence establishes that, in 2004, she was in fact promoted to ARM and given a production goal that was over 20% higher than that of plaintiff or Spredemann. *See* Def.'s Br., Ex. F, Kremer Decl., Tab 1. Further, unlike plaintiff, Shors never produced less than 50% of the production goal (58.46% in 2005), and she exceeded her goal in 2004 and 2006. *See id.*, Ex. B, Wood Decl., ¶ 16. Thus, plaintiff cannot show that Shors was treated more favorably than was she. Further, any favorable treatment that Shors may have received is explained not by age, but by the fact that, in plaintiff's own words, Shors was an "exception" because she was related to a ReliaStar executive. *See* Pl.'s Dep., at 99. Thus, a comparison of the treatment afforded plaintiff and Shors provides no evidence of discriminatory animus.

With respect to the proximity between her termination and the vesting of her pension benefits, plaintiff offers nothing to show discriminatory animus beyond the proximity alone. Temporal proximity alone is insufficient to establish discriminatory animus. *Cf. West v. General Motors Corp.*,

469 Mich. 177, 186, 665 N.W.2d 468, 472-73 (2003). More fundamentally, an employer's desire to

avoid pension liabilities does not, in itself, constitute discrimination on the basis of age. As the

Supreme Court has explained in the context of the ADEA:

> It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age. As we explained in *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes.
>
> > "Although age discrimination rarely was based on the sort of animus motivating some other forms of discrimination, it was based in large part on stereotypes unsupported by objective fact.... Moreover, the available empirical evidence demonstrated that arbitrary age lines were in fact generally unfounded and that, as an overall matter, the performance of older workers was at least as good as that of younger workers." Id., at 231, 103 S.Ct., at 1057-1058.
>
> > Thus the ADEA commands that "employers are to evaluate [older] employees ... on their merits and not their age." *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 422, 105 S.Ct. 2743, 2756, 86 L.Ed.2d 321 (1985). The employer cannot rely on age as a proxy for an employee's remaining characteristics, such as productivity, but must instead focus on those factors directly.
>
> > When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is. Pension plans typically provide that an employee's accrued benefits will become nonforfeitable, or "vested," once the employee completes a certain number of years of service with the employer. See 1 J. Mamorsky, Employee Benefits Law § 5.03 (1992). On average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, see 29 U.S.C. § 631(a), may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."

*Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610-11 (1993). The Michigan courts have adopted this

reasoning in interpreting the ELCRA. *See Plieth v. St. Raymond Church*, 210 Mich. App. 568, 573-

74, 534 N.W.2d 164, 167-68 (1995).

For these reasons, the Court should conclude that plaintiff has failed to establish a genuine issue of material fact with respect to her *prima facie* case of age discrimination. Accordingly, the Court should grant defendant's motion for summary judgment on this claim.

F.     *Contract and Related Equitable Claims (Counts II-V)*

1.     *Bonuses and Commissions*

Plaintiff alleges that defendant breached its contract with her by failing to pay bonuses and commissions due to her following her termination. There is no dispute that plaintiff seeks bonuses and commissions relating to sales made in 2005, but for which the premiums were not paid until 2006, following her termination. Further, there is no dispute that the plain language of the Agreement provides that a sales representative "will not be entitled to bonus on any Net Premiums received by the Company after the Termination Date." Def.'s Br., Ex. C, § 10.2. In order to overcome this language, plaintiff argues that defendant cannot rely on the Agreement for several reasons, and that in the absence of an express agreement there is a genuine issue of material fact with respect to whether she is entitled to recover on the equitable quasi-contract theories of implied contract, unjust enrichment, procuring cause, and promissory estoppel. Plaintiff's quasi-contract claims, and hence her right to recover the bonuses and commissions she seeks, depends on her overcoming the language of the Agreement because "a contract cannot be implied in law while an express contract covering the same subject matter is in force between the parties." *H.J. Tucker & Assocs., Inc. v. Allied Chucker & Eng'g Co.*, 234 Mich. App. 550, 573, 595 N.W.2d 176, 188 (1999); *see also*, *Johnson Controls, Inc. v. Jay Industries, Inc.*, 459 F.3d 717, 730 (6th Cir. 2006). The Court should conclude that defendant is entitled to summary judgment on plaintiff's contract and related equitable claims.[11]

---

[11]In addition to the arguments addressed in this section, plaintiff also argues that defendant is precluded from relying on the Agreement because of its violation of the Bullard-Plawecki Right

Plaintiff first contends that § 10.2, by requiring forfeiture of commissions earned prior to termination, violates Michigan public policy and thus is unenforceable. This argument is without merit. In support of her claim, plaintiff relies on the Michigan Court of Appeals's decision in *Hill v. IKON Office Solutions, Inc.*, No. 263147, 2006 WL 3524069 (Mich. Ct. App. Dec. 7, 2006). In *Hill*, the court held that a contract which provided that a terminated employee was not entitled to commissions was void pursuant to the Sales Representative Commissions Act (SRCA), which in relevant part provides that "[a]ll commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date of which the commission became due." MICH. COMP. LAWS § 600.2961(4). The court concluded that this language superseded a contractual provision which precluded the payment of commissions which otherwise would have been "due" at the time of termination but for the provision preventing payment of any commissions to a terminated employee. *See Hill*, 2006 WL 3524069, at *9-*10. Although the SRCA does not apply to commissioned insurance sales representatives, *see Klapp v. United Ins. Group Agency*, 259 Mich. App. 467, 474, 674 N.W.2d 736, 740 (2003), plaintiff claims that *Hill* establishes a public policy voiding provisions such as that at issue here.

Plaintiff's reliance on *Hill* is misplaced. As noted above, in *Hill* the court concluded that the commissions had otherwise become "due," and that the only basis asserted by the defendant was that the plaintiff had been terminated and no commissions, whether due or not, were paid to terminated employees. Here, however, defendant makes no similar argument. Rather, defendant argues, and the contractual language confirms, that the commissions were not yet "due" at the time of termination

to Know Act. This argument is addressed in part I, *infra*.

because commissions are determined due based on the date of the premium payment. Nothing in *Hill* establishes that contract language of this type violates either the SRCA specifically or Michigan public policy generally. On the contrary, Michigan "caselaw is replete with examples of valid contracts concerning the payment of commissions." *Stann v. Compuware, Inc.*, No. 219329, 2001 WL 710165, at * (Mich. Ct. App. June 22, 2001); *see Clark Brothers Sales Co. v Dana Corp.*, 77 F. Supp. 2d 837, 852 (E.D. Mich. 1999); *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 374, 509 N.W.2d 791, 796 (1993). Further, the SRCA itself provides that "[t]he terms of the contract . . . shall determine when a commission becomes due." MICH. COMP. LAWS § 600.2961(2). "The purpose of the Act is to ensure that post-termination commissions are fully and promptly paid when due. The Act does not expand the scope of contractual obligations to pay post-termination commissions." *Muqtadir v. Micro Contacts, Inc.*, 148 Fed. Appx. 348, 352 (6th Cir. 2005); *see also*, *Clark Bros. Sales*, 77 F. Supp. 2d at 852 (the SRCA "does not create a new obligation or impose a new duty to pay sales commissions."). In other words, the SRCA requires only that the defendant pay all commissions that have become "due" under the terms of the parties' contract. *See APJ Assocs., Inc. v. North American Phillips Corp.*, 317 F.3d 610, 616 (6th Cir. 2003). Thus, the public policy of the SRCA, even if applicable here, does not preclude the contractual provision upon which defendant relies. Defendant's duty was to pay commissions to plaintiff that were due at the time she was terminated pursuant to the terms of the Agreement, and the Agreement provided that commissions did not become "due" until the premiums were paid. This contractual provision does not conflict with the SRCA or any other provision of Michigan public policy, and thus is valid.

Plaintiff next contends that defendant cannot rely on the Bonus Agreement because the preamble to the agreement states that "[t]his Agreement is not an employment contract of any kind. All ING Benefits Sales Representatives are employed at-will[.]" Def.'s Br., Ex. C, at 1. In support

of this argument, plaintiff relies on *McGough v. Broadwing Communications, Inc.*, 177 F. Supp. 2d 289 (D.N.J. 2001) (applying Pennsylvania law). However, *McGough* does not stand for the proposition, implicit in plaintiff's argument, that the language disavowing an intent to create a contract requires the Court to simply disregard the Agreement and determine plaintiff's entitlement to commissions and bonuses from scratch. On the contrary, *McGough* supports the conclusion that the terms of the Agreement are binding on the parties here.

In *McGough*, the plaintiffs claimed that they were entitled to post-termination commissions pursuant to the defendant's compensation plan. The plan explicitly disclaimed an intent to create a binding contract or any employment other than at-will and, unlike the contract at issue here, even explicitly disclaimed any intent to give the plaintiffs any right to receive compensation. *See id.* at 295. The court agreed with the defendant that the compensation plan did not, in itself, constitute a contract or alter the plaintiffs' status as at-will employees. *See id.* at 296. The court held, however, that this fact did not relieve the defendant of its contractual obligation to compensate plaintiffs for their services, and that "while the language of the Plan's disclaimer may reserve [defendant's] right to alter the nature and extent of Plaintiffs' compensation for future services, it cannot and does not permit [defendant] to retroactively modify the terms of Plaintiff's compensation for work performed prior to such modifications." *Id.* Thus, the plaintiffs were entitled to compensation pursuant to the terms of the plan. *See id.*

Here, of course, the position of the parties is reversed: defendant seeks to enforce the terms of the plan, while plaintiff seeks to avoid those terms. To the extent that *McGough* is applicable here, however, it supports defendant's position. Under the reasoning of *McGough*, even if the Agreement is not a binding contract, it provides the terms for evaluating plaintiff's right to compensation. Stated another way, the terms of the Agreement, even if not sufficient to constitute an express contract,

become the terms of an implied-in-fact contract. *See id*. at 297. As the Michigan Court of Appeals

has recently explained:

> Michigan recognizes two kinds of implied contracts: those implied in fact and those implied in law. *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (CA 6, 2001), citing *Cascaden v. Magryta*, 247 Mich. 267, 270; 225 N.W. 511 (1929). Under Michigan law, "[a] contract will be implied only if there is no express contract .... [and][t]here cannot be an express and implied contract covering the same subject matter at the same time." *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 722 (ED Mich, 2005) (citing Campbell v. City of Troy, 42 Mich.App 534, 537; 202 N.W.2d 547 (1972)).

> . . . . A contract implied in fact arises between parties "when those parties show a mutual intention to contract," *Kingsley Assoc., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 504 (CA 6, 1995), citing *Erickson v. Goodell Oil Co.*, 384 Mich. 207, 211-212; 180 N.W.2d 798 (1970), and it is "founded upon a meeting of the minds that, although not embodied in an express contract, is inferred, as a fact from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules Inc. v. United States*, 516 U.S. 417, 424; 116 S Ct 981; 134 L.Ed.2d 47 (1996). Conversely, a claim of unjust enrichment is based on a contract implied in law, *Liggett Restaurant Group, Inc. v. City of Pontiac*, 260 Mich.App 127, 137; 676 N.W.2d 633 (2003), which does not require mutual assent, "but is imposed by fiction of law" even if no contract is intended. *Wrench LLC*, *supra* at 456.

*Complete Auto & Truck Parts, Inc. v. City of Flint*, No. 268485, 2007 WL 1934792, at *1 (Mich. Ct.

App. July 3, 2007) (per curiam). Here, even if the Agreement does not constitute an express contract,

there is no genuine issue of material fact that the Agreement constitutes an implied-in-fact contract

with respect to plaintiff's entitlement to bonuses and commissions. Plaintiff executed the Agreement

in writing, indicating her assent to be bound by its terms, and plaintiff has presented no evidence that

the parties' course of dealing with respect to the payment of bonuses and commissions differed from

the terms of the Agreement at any time during the parties' relationship. And the existence of an

implied-in-fact contract precludes plaintiff's equitable and implied-in-law claims the same as would

an express contract. *See Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 506 (6th Cir.

1995) (applying Michigan law) ("Any additional recovery under the theory of unjust enrichment is

precluded by our finding of an implied-in-fact contract because the existence of an implied-in-fact contract, which provides a legal remedy, will bar a claim of unjust enrichment, which seeks an equitable remedy.").

In short, plaintiff's right to commissions and bonuses is governed by the language of the Agreement to which she assented, whether the agreement is viewed as an express contract or a contract implied-in-fact. Because commissions did not become due under the Agreement until the premiums were paid by the insured, and because the commissions which plaintiff seeks to recover are based on premiums paid after her termination, she is not entitled to the commissions she seeks. Accordingly, the Court should grant defendant's motion for summary judgment.

2. *Termination*

Plaintiff also argues that the language of defendant's 2005 Performance Improvement Plan is ambiguous with respect to whether she was a "new sales rep" or "newly hired sales rep." She argues that, because defendant relies on the Improvement Plan as the basis for its termination of her employment, this ambiguity creates a genuine issue of material fact with respect to whether defendant breached the contract. This claim is without merit, however, for two reasons.

First, plaintiff has not raised a claim in her complaint that her *termination*, as opposed to defendant's failure to pay commissions, constituted a breach of contract. *See* Amended Compl., ¶¶ 15-19. Plaintiff's termination is cited only as a basis for her discrimination claims. She does not allege in the complaint that her termination constituted a breach of contract. A plaintiff may not "avoid summary judgment based on a claim that is not pled in her complaint." *Patrick v. Northwest Airlines, Inc.*, No. 00-554-JD, 2002 WL 467126, at *3 (D.N.H. Mar. 27, 2002); *see also*, *Perdue v. Union City, Ga.*, No. 1:05CV00753, 2006 WL 2523094, at *9 (N.D. Ga. Aug. 28, 2006). In any event, this claim is without merit. Plaintiff was an at-will employee. While defendant's reliance on

the Improvement Plan, or its failure to follow that plan, may be relevant in examining its motives for terminating plaintiff in connection with plaintiff's discrimination claims, as a matter of contract law defendant was free to terminate plaintiff for any reason or no reason whatsoever. *See Rood v. General Dynamics Corp.*, 444 Mich. 107, 116, 507 N.W.2d 591, 597 (1993). And, defendant's promulgation of disciplinary procedures did not obligate defendant to follow those procedures before terminating plaintiff; defendant could terminate plaintiff at-will notwithstanding its Improvement Plan or any other disciplinary policies. *See Baggs v. Eagle-Picher Indus., Inc.*, 957 F.2d 268, 271-72 (6th Cir. 1992); *Stopczynski v. Ford Motor Co.*, 200 Mich. App. 190, 194-95, 503 N.W.2d 912, 914 (1993); *Biggs v. Hilton Hotel Corp.*, 194 Mich. App. 239, 241-42, 486 N.W.2d 61, 62-63 (1992). Accordingly, to the extent plaintiff asserts a breach of contract claim based on her termination, the claim is without merit and defendant is entitled to summary judgment.

3.     *Severance*

Plaintiff next contends that she was entitled to severance under the ING Severance Benefits plan, *see* Pl.'s Br., Ex. K, and that there is a genuine issue of material fact with respect to whether she is entitled to severance benefits. Defendant responds that the Severance Benefits plan is not a contract, and that plaintiff's termination was not a "qualified termination" under the plan. However, the Court need not resolve these issues because even if the Severance Benefits plan is a contract, as defendant argues plaintiff has presented no evidence that she satisfied a condition precedent to her receipt of severance benefits.

"A condition precedent is something that must occur before there is a right to performance." *Lee v. Auto-Owners Ins. Co.*, 201 Mich. App. 39, 43, 505 N.W.2d 866, 868 (1993), *vacated on other grounds*, 445 Mich. 908, 519 N.W.2d 890 (1994); *see also*, *HyKing Assocs., Inc. v. Versatech Mfg. Indus. Co.*, 826 F. Supp. 231, 238 (E.D. Mich. 1993) (Gadola, J.) (citing *MacDonald v. Perry*, 342

Mich. 578, 70 N.W.2d 721 (1955)). Here, the Severance Benefits plan explicitly requires, as a condition precedent to the payment of benefits, that the employee execute a waiver and release within 45 days of termination. *See* Pl.'s Br., Ex. K, at 3, 4. Plaintiff has presented no evidence that she satisfied this condition precedent, and her failure to do so is fatal to her breach of contract claim. *See Scherer v. Hellstrom*, 270 Mich. App. 458, 464, 716 N.W.2d 307, 311 (2006) ("Generally, if performance is dependent on a condition precedent, the cause of action does not accrue until the condition is fulfilled *and* the promise is not performed."); *Berkel & Co. Contractors v. Christman Co.*, 210 Mich. App. 416, 420, 533 N.W.2d 838, 840 (1995) ("Failure to satisfy a condition precedent prevents a cause of action for failure of performance.").[12] Accordingly, the Court should conclude that defendant is entitled to summary judgment on this claim.

### 4. *Holdback Bonus*

Finally, plaintiff contends that it is undisputed that defendant owes her $2,028.16 for holdback of bonuses earned before defendant fired her. This claim is based on an exchange between plaintiff and counsel for defendant during plaintiff's deposition, in which counsel indicated that he had sent a check covering the remainder of plaintiff's hold-back, and a cover letter explaining the check. Plaintiff indicated that she had received the letter, but not the check. Counsel for defendant indicated that he would inquire about the matter with defendant and his office. *See* Pl.'s Dep., at 275-76. Therefore, plaintiff contends, she is entitled to summary judgment in her favor with respect to this amount. Defendant contends that although it voluntarily elected to pay plaintiff her holdback and

---

[12]*Oser v. Clear!Blue Mgmt., Inc.*, 478 Mich. 889, 731 N.W.2d 774 (2007), upon which plaintiff relies on her letter of supplemental authority, does not alter this conclusion. The court's summary order in *Oser* merely concluded that, in that case, the plaintiff has presented sufficient evidence to withstand summary disposition with respect to whether her firing was not for just cause so that she became entitled to contractual severance benefits. *Oser* does not address the condition precedent issue.

intends to do so, it is not contractually obligated to do so and thus plaintiff is not entitled to summary judgment in her favor or to avoid summary judgment against her. The Court should agree.

The Bonus Schedule explicitly provides that "[i]f the sales representative resigns or is terminated during Phase I or Phase II, the Company reserves the right to retain his/her holdback." Def.'s Br., Ex. D, at 27. There is no dispute that plaintiff was terminated while on Phase I probation, and thus plaintiff has no *contractual* right to the holdback bonuses. Accordingly, the Court should grant summary judgment to defendant on this claim.

G.      *Fraud (Count VI)*

Plaintiff also brings a claim of fraud based on Lockhart's assurance to her, sometime in 2005, that "she would be taken care of for her efforts as she always had been." Pl.'s Aff., ¶ 8. To prove fraud, plaintiff must prove the following elements:

> (1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury.

*City of Novi v. Robert Adell Children's Funded Trust*, 473 Mich. 242, 253 n.8, 701 N.W.2d 144, 152 n.8 (2005); *see also*, *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 477, 666 N.W.2d 271, 280 (2003). The Court should conclude that defendant is entitled to summary judgment on this claim.

Here, plaintiff's right to post-termination commissions was governed by the contract between her and defendant. Under the economic loss rule, as reflected in Michigan law, "a tort claim of fraud cannot be based solely on the parties' contractual relationship, but must rest upon the breach of a duty separate from the parties' contractual obligation." *Rainbow Nails Enters., Inc. v. Maybelline, Inc.*, 93 F. Supp. 2d 808, 831 (E.D. Mich. 2000) (Rosen, J.); *see also*, *Sherman v. Sea Ray Boats, Inc.*, 251

Mich. App. 41, 52, 649 N.W.2d 783, 789 (2002). Here, plaintiff's fraud claim relates to the subject matter of the contract between herself and defendant. The claim is thus solely one for breach of contract, and thus cannot constitute actionable fraud.

Further, plaintiff has failed to provide sufficient evidence to withstand summary judgment on the misrepresentation and reliance elements of her fraud cause of action. With respect to misrepresentation, the Michigan courts have held that a misrepresentation must be a statement of past or existing fact; future promises are contractual in nature and breaching such a promise constitutes "neither fraud nor evidence of fraud." *Michael v. Amway Corp.*, 206 Mich. App. 644, 652, 522 N.W.2d 703, 707 (1994); *see also*, *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 444, 505 N.W.2d 275, 279 (1993), *modified on other grounds by Patterson v. Kleiman*, 447 Mich. 429, 526 N.W.2d 879 (1994). There is an exception to this rule for promises made in bad faith with no intention on the part of the promisor to perform. *See Derderian v. Genesys Health Care Sys.*, 263 Mich. App. 364, 378, 689 N.W.2d 145, 156 (2004). However, "[e]vidence of fraudulent intent, to come within the exception, must relate to conduct of the actor at the very time of making the representation, or almost immediately thereafter." *Id*. at 379, 689 N.W.2d at 156 (internal quotation omitted). Here, Lockhart's allege statement to plaintiff was vague. It could have meant, as she claims, that Lockhart was promising that she would receive commissions for her 2005 sales regardless of the Bonus Schedule; however, it equally could have meant simply that she would continue to be compensated in accordance with the Bonus Schedule, as she always had been. *Cf. Liberty Heating & Cooling, Inc. v. Builders Square, Inc.*, 788 F. Supp. 1438, 1446 (E.D. Mich. 1992) (Edmunds, J.) (vague and indefinite statements insufficient to support promissory estoppel claim). More importantly, there is no evidence that, at the time Lockhart made the statement, he did not intend to perform. Plaintiff has provided no evidence regarding when the statement was made in relation to

30

her ultimate termination, or the context in which the statement was made. The mere fact that Lockhart's alleged promise was breached is "neither fraud nor evidence of fraud." *Michael*, 206 Mich. App. at 652, 522 N.W.2d at 707. Thus, plaintiff has failed to raise a genuine issue of material fact with respect to whether Lockhart made a misrepresentation of past or existing fact which is actionable in a fraud cause of action.

Further, plaintiff cannot establish the reliance element of her fraud claim. In order to establish this element, plaintiff must show not only that she actually relied on the alleged misrepresentation, but also that her reliance was reasonable. *See Foreman v. Foreman*, 266 Mich. App. 132, 141-42, 701 N.W.2d 167, 175 (2005); *Bergen v. Baker*, 264 Mich. App. 376, 389, 691 N.W.2d 770, 778 (2004); *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 690-91, 599 N.W.2d 546, 554 (1999). Here, plaintiff could not reasonably have relied on Lockhart's alleged misrepresentation which conflicted with the terms of her written contract with defendant. *See McCreery v. Seacor*, 921 F. Supp. 489, 493 (W.D. Mich. 1996); *Kovacs v. Electronic Data Sys. Corp.*, 762 F. Supp. 161, 166-67 (E.D. Mich. 1990) (Suhrhenrich, J.); *Novak*, 235 Mich. App. at 689-91, 599 N.W.2d at 554; *Nieves v. Bell Indus., Inc.*, 204 Mich. App. 459, 464, 517 N.W.2d 235, 237 (1994).

For these reasons, plaintiff's fraud claim fails as a matter of law.[13] Accordingly, the Court

---

[13]Plaintiff points to *Coffel v. Stryker Corp.*, 284 F.3d 625 (5th Cir. 2002), as a case which is factually indistinguishable from her case and in which the court permitted the fraud claim to proceed. While *Coffel* is factually similar to this case, it is legally distinguishable. In the first place, the *Coffel* court considered only whether the plaintiff's fraud claims satisfied the elements of fraud under Texas law. The court did not consider specifically the economic loss rule–requiring a separation of contractual and tort claims–applied here as the principal basis for rejecting plaintiff's claim. *See id.* at 631-37. Moreover, it appears that Texas law differs significantly from Michigan law when it comes to the viability of fraud claims predicated upon promises of future performance. *Compare Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 557-58 (Tex. Ct. App. 1998) (allowing claim of fraud by at-will employee based on promise that he would not be terminated if he performed satisfactorily), *with Novak*, 235 Mich. App. at 689-91, 599 N.W.2d at 554 (reaching contrary result) *and Nieves*, 204 Mich. App. at 464, 517 N.W.2d at 237 (same).

should grant defendant's motion for summary judgment with respect to this claim.

H.    *Accounting and Exemplary Damages (Counts VII-VIII)*

In Counts VII and VIII of her amended complaint, plaintiff asserts causes of action for an accounting and exemplary damages.  These claims are for remedies which are derivative of her substantive claims for relief.  Because, as explained throughout this Report, defendant is entitled to summary judgment on plaintiff's underlying substantive claims, defendant is also entitled to summary judgment on these counts of plaintiff's amended complaint.  In passing, I note that, even if the underlying claims survived summary judgment, an accounting would not be an appropriate remedy.  Plaintiff's damages claims relating to her commissions seek a contractual damage remedy, and there is no indication that the ordinary discovery process is insufficient to ascertain her damages.  In these circumstances, an equitable accounting is not an appropriate remedy.  *See Boyd v. Nelson Credit Ctrs., Inc.*, 132 Mich. App. 774, 779, 348 N.W.2d 25, 27 (1984).

I.    *Right to Know Act (Count IX)*

Plaintiff next brings a claim under the Bullard-Plawecki Employee Right to Know Act.  The Act provides, in relevant part, that "[a]n employer, upon written request which describes the personnel record, shall provide the employee with an opportunity to periodically review at reasonable intervals . . . the employee's personnel record if the employer has a personnel record for that employee."  MICH. COMP. LAWS § 423.503.  The Act also provides that, after the review called for in § 423.503, the employee may obtain a copy of the personnel record.  *See* MICH. COMP. LAWS § 423.504.  The Act provides a right of action in circuit court to compel compliance with the Act, and provides that upon finding a violation the circuit shall award either (a) actual damages and costs, or (b) in the case

---

Thus, *Coffel* is not persuasive authority for plaintiff's argument.

of a willful violation, $200.00 plus actual damages, costs, and attorney fees. *See* MICH. COMP. LAWS § 423.511. Finally, the Act provides that "[p]ersonnel record information which was not included in the personnel record but should have been as required by this act shall not be used by an employer in a judicial or quasi-judicial proceeding." MICH. COMP. LAWS § 423.502.

Plaintiff claims that she requested her personnel records in a January 25, 2006, e-mail to Lockhart. She contends that although defendant produced some records, it did not produce the Bonus Agreement until the status conference with this Court on July 17, 2006. Plaintiff argues that this failure to disclose the Agreement mandates exclusion of the Agreement in this proceeding under § 423.502, thus enabling her to proceed on her quasi-contract theories, and entitles her to damages, costs, and attorney fees under § 423.511. The Court should conclude that defendant is entitled to summary judgment on this claim.[14]

The Act defines "personnel record" as "a record kept by the employer that identifies the employee, to the extent that the record is used or has been used, or may affect or be used relative to that employee's qualifications for employment, promotion, transfer, additional compensation, or disciplinary action[.]" MICH. COMP. LAWS § 423.501(2)(c). However, the Act explicitly excludes from the definition of "personnel record" any "[m]aterials relating to the employer's staff planning with respect to more than 1 employee, including salary increases, management bonus plans, promotions, and job assignments." *Id.* § 423.501(2)(c)(ii). The Bonus Agreement establishes a commission and bonus plan applicable to all ING employees, and thus does not constitute a "personnel record" under § 423.501(2)(c)(ii). *Cf. Muskovitz v. Lubbers*, 182 Mich. App. 489, 497,

---

[14]It is questionable whether the evidentiary exclusion set forth in § 423.502 is applicable in this federal court proceeding. *See Burke v. Health Plus of Mich., Inc.*, No. 01-10335-BC, 2003 WL 102800, at *8 (E.D. Mich. Jan. 7, 2003) (Lawson, J.). Because plaintiff has failed to establish a violation of the Act, the Court need not resolve this issue.

452 N.W.2d 854, 858 (1990).  Further, plaintiff was presented the Agreement and signed it, and thus was aware of its existence.  *See Toolanen v. Lear Corp.*, No. 272056, 2007 WL 189650, at *2 (Mich. Ct. App. Jan. 25, 2007) (per curiam).  Finally, it does not appear that plaintiff complied with the requirements of the Act in making her request.  Plaintiff's e-mail to Lockhart simply requested copies of personal records and pension information.  *See* Def.'s Br., Ex. K.  Plaintiff did not request to review the records pursuant to § 423.503 or explain why she could not review the records at the place of employment pursuant to § 423.504, and her failure to do so is fatal to her claim under the Act.  *See Betzgold v. Saginaw Cooperative Hosp.*, No. 251258, 2005 WL 356696, at *5 (Mich. Ct. App. Feb. 15, 2005) (per curiam).

For these reasons, the Court should grant defendant's motion for summary judgment with respect to plaintiff's Bullard-Plawecki Act claims.

J.      *ERISA Interference (Count X)*

Finally, plaintiff contends that defendant terminated her employment in order to save on pension benefits in which she would have been vested a little over two years after she was terminated, in violation of § 510 of the Employee Retirement Income Security Act (ERISA).  The Court should conclude that defendant is entitled to summary judgment on this claim.

Section 510 of ERISA provides, in relevant part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140.  Under § 510, it is not enough for a plaintiff to show that an employer's decision affected the plaintiff's entitlement to plan benefits.  Rather, "[t]o state a claim under § 510, the plaintiff must show that an employer had a specific intent to violate ERISA." *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997) (internal quotation omitted); *accord Majewski v.*

*Automatic Data Processing, Inc.*, 274 F.3d 1106, 1113 (6th Cir. 2001) (plaintiff "must demonstrate not only that he lost the opportunity to accrue new benefits, but also that [defendant] had the specific intent of avoiding ERISA liability when it discharged him."). Where there is no direct evidence of intent to interfere with ERISA benefits, the Court applies the *McDonnell Douglas* burden-shifting framework. *See Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1410 (6th Cir. 1996). To establish a *prima facie* case of ERISA interference, a plaintiff must present evidence "showing existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may be entitled." *Smith*, 129 F.3d at 865 (internal quotation omitted).

In this case Lockart, the decision maker who terminated plaintiff, avers that at the time of the decision he had no knowledge of plaintiff's age or the circumstances relating to her present or future entitlement to pension benefits. *See* Def.'s Br., Ex. N., Decl. of Dave Lockhart, ¶ 2. Plaintiff has presented no direct or circumstantial evidence which rebuts this assertion, instead arguing that defendant's intent to interfere with her ERISA benefits may be inferred from the fact that she would have vested within 27 months of her termination, and her vesting would have cost defendant over $500,000 in pension benefits. *See* Pl.'s Dep., at 178, 185-88. This is insufficient to raise a genuine issue of material fact with respect to defendant's intent to interfere.

Although temporal proximity coupled with significant liabilities can standing alone constitute sufficient evidence to infer intent in some circumstances, those circumstances involve a temporal proximity that is much shorter than that alleged here. Thus, in *Humphreys v. Bellaire Corp.*, 966 F.2d 1037 (6th Cir. 1992), the court allowed an interference claim to proceed where the only evidence of intent was that a substantial amount in benefits would have vested two months after the termination. The court explained, however, that the plaintiff's allegations in that case constituted "no more than the bare minimum that a plaintiff must show to meet the *prima facie* case threshold." *Id*. at 1043-44.

The courts have consistently refused to find an inference of interference based on much longer gaps. *See Almond v. ABB Industrial Sys., Inc.*, 56 Fed. Appx. 672, 681 (6th Cir. 2003) (18 months); *Hanifen v. Ball Corp.*, No. 1:98cv972, 2005 WL 1712004, at *5-*6 (S.D. Ohio July 21, 2005) (15 months); *Massachusetts v. Bull HN Information Sys., Inc.*, 143 F. Supp. 2d 134, 160-61 (18 months).

This conclusion is buttressed by the courts' interpretation of the various civil rights retaliation provisions. Under these provisions, an adverse employment action taken in retaliation for an employee's exercise of rights under a civil rights law is unlawful. Although temporal proximity alone can suffice to establish the retaliatory intent, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly held that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). In support of this proposition, the Court cited cases holding that lapses of even three months between the protected activity and the adverse employment action are too long to support an inference of discrimination. *See id.* (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3 month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4 month period insufficient)). As the Sixth Circuit has observed, "cases that have permitted a *prima facie* case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000); *see also*, *Lentz v. City of Cleveland*, 410 F. Supp. 2d 673, 691 (N.D. Ohio 2006).

Thus, the gap of 27 months between plaintiff's termination and the time she would have vested is, standing alone, insufficient to raise an inference that defendants intended to interfere with plaintiff's ERISA benefits, particularly in light of the absence of any evidence contradicting

Lockhart's declaration that he had no knowledge of the circumstances relating to the vesting of plaintiff's retirement benefits. *See Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1035 & n.8 (8th Cir. 2007).[15]  Accordingly, the Court should conclude that defendant is entitled to summary judgment on plaintiff's ERISA benefits claim.

K.      *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff has failed to establish a genuine issue of material fact with respect to any of the claims asserted in her amended complaint, and that defendant is entitled to judgment on these claims as a matter of law.  Accordingly, the Court should grant defendant's motion for summary judgment.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers*

---

[15]Plaintiff's reliance on *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2006), is misplaced. In that case, there was only a two month gap between the decision maker's learning of the plaintiff's pregnancy, qualifying her for ERISA health benefits, and the decision to terminate her, and there was other evidence of the defendant's discriminatory animus. *See id.* at 595-98.  Here, the gap is much longer, and there is no other evidence supporting an inference of ERISA discrimination.  Plaintiff's evidence of discriminatory animus, even if it were otherwise sufficient to raise a genuine issue of material fact, does not relate to her ERISA benefits, but her gender. Accordingly, *Asmo* is inapposite.

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 8/21/07

┌─────────────────────────────────────────────┐
│ The undersigned certifies that a copy of the  │
│ foregoing order was served on the attorneys   │
│ of record by electronic means or U.S. Mail on │
│ August 21, 2007.                              │
│                                               │
│                    s/Eddrey Butts             │
│                    Case Manager               │
└─────────────────────────────────────────────┘

38